UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL RUSSO, | ) |
| | ) |
| PLAINTIFF | ) |
| | ) |
| v. | ) CIVIL NO. 19-CV-324-DBH |
| | ) |
| VALMET INC. AND VALMET, INC. | ) |
| DEFINED BENEFIT PLAN, | ) |
| | ) |
| DEFENDANTS | ) |

**DECISION AND ORDER ON MOTION TO DISMISS**

This is a lawsuit seeking retirement benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. The plaintiff claims his employer's defined benefit plan has wrongly denied him benefits even though he meets the plan's definition of "eligible employee." He also claims a breach of fiduciary duty, alleging that he took the job in reliance on statements that he would be entitled to benefits under the plan. Therefore, he says, even if he is not covered by the plan's actual terms, the court should (among other things) reform the plan to include him. The employer and the plan have filed a motion to dismiss, arguing he is not covered by the plan and cannot pursue a breach of fiduciary duty claim. Their arguments about the plan's coverage rely on extrinsic documents that I cannot consider on this motion to dismiss, and their arguments about the breach of fiduciary duty claim are premature. I therefore **DENY** the motion to dismiss.

**ANALYSIS**

I take all the well-pleaded facts in the Complaint as true and draw all reasonable inferences in the plaintiff's favor. Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018). Other than in narrow exceptions, one of which I discuss below, I cannot consider extrinsic documents at this stage of the proceedings. Parker v. Hurley, 514 F.3d 87, 90 n.1 (1st Cir. 2008) ("Normally, documents not included in the original pleading cannot be considered on a Rule 12(b)(6) motion without converting the motion into one for summary judgment."); Fed. R. Civ. Pro. 12(d) ("If . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment.").

## *Count I*

The plaintiff's first Count, under 29 U.S.C. § 1132(a)(1)(B),[1] claims that he was entitled to benefits under the plan. Compl. at 3-4 (ECF No. 1). (I will call it the subsection (a)(1) claim.) The defendants argue that his allegations "are flatly contradicted by the terms of the [p]lan itself." Mot. to Dismiss at 4 (ECF No. 10). In support, they cite portions of the plan that are not contained in the plaintiff's complaint, and they attach a document to their motion that they say is the full plan. See id. at 4-5; Mot. Ex. A (ECF Nos. 10-1 & 2). The plaintiff did quote a portion of the plan in his complaint, Compl. ¶¶ 11-12, but he did not attach the full plan. If the authenticity of the document provided by the defendants were

---

[1] The Complaint cites 29 U.S.C. § 1106(a)(1)(B), which is not applicable in this case. Compl. ¶ 7 (ECF No. 1). The defendants proceeded under the assumption the Complaint intended to refer to § 1132(a)(1)(B). See Mot. to Dismiss at 4 n.1 (ECF No. 10). The plaintiff made clear in his opposition that that assumption was correct. Pl.'s Obj. to Mot. at 4 (ECF No. 13) ("Plaintiff has thus stated a claim under section 1132(a)(1)(B).").

unchallenged, then I could consider it in deciding this motion, since the plan is "integral to or explicitly relied upon in the complaint." Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (quoting Shaw v. Dig. Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)); Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998) (requiring that the "authenticity" of the document "is not challenged").

But here, there is doubt as to whether the plan attached to the defendants' motion is the right one. See Pl.'s Obj. to Mot. at 5 (ECF No. 13) ("The Court has no basis for assuming that this document is equivalent to the document referenced in the Complaint."). Its title—"Metso Paper USA, Inc. Retirement Plan" (ECF No. 10-1)—differs from the title cited in the plaintiff's complaint, "Valmet, Inc. Defined Benefit Plan." Compl. ¶ 3. The defendants explain the difference in their reply, citing an amendment that purportedly changed the name of the plan from "Metso Paper USA" to "Valmet, Inc." Defs.' Reply in Support of Mot. at 2 (ECF No. 16); Plan amendment (ECF No. 16-1). That is a long stretch from the standard on a motion to dismiss, where I can only consider a document outside the pleadings if it is "integral to or explicitly relied upon in the complaint." The name-change amendment does not meet that requirement.

In addition to the difference in document titles, the Complaint's descriptions of the plan do not match the plan the defendants provided. According to the Complaint, section 1.17 of the plan provides the definition of "Eligible Employee." Compl. ¶ 11. In the defendants' attachment, that definition is in section 1.18. Mot. Ex. A at 10 (ECF No. 10-1). The Complaint includes a quotation from section 1.18's definition of "Employee." Compl. ¶ 12. The

defendants' attachment defines "Employee" in section 1.19, and the wording of the definition is somewhat different.  ECF No. 10-1 at 11.  Considering these differences, I cannot conclude that the authenticity of this document "is not challenged,"[2] and I **DENY** the motion to dismiss Count I.  The defendants' arguments for dismissal are better suited to a motion for summary judgment.

## *Count II*

In his second Count, the plaintiff claims that if he cannot recover plan benefits under subsection (a)(1), he is entitled to equitable relief under 29 U.S.C. § 1132(a)(3) because he accepted the defendant employer's job offer in reliance upon assurances that he would be a member of the plan.  Compl. at 4-5 (ECF No. 1).  I will call this the subsection (a)(3) claim.  Count II seeks relief in the form of "reformation of the terms of the Plan," "injunctive relief requiring Defendants both to pay Plaintiff all benefits that had accrued . . . and to provide ongoing monthly benefits," and "restitution by Defendants for all of Plaintiff's losses" (along with attorney fees and any further relief deemed just and equitable).  Id. at 5.  The defendants make several arguments for dismissing Count II, but none is sufficient.

### *Availability of Equitable Relief*

First, the defendants argue that equitable relief is not available under subsection (a)(3) if the plaintiff already has a remedy available under

---

[2] The other documents the defendants attached to their motion (ECF Nos. 10-3, 4, & 5) were not "integral to or explicitly relied upon in the complaint."  Clorox, 228 F.3d at 32.  One of them, a summary plan description (ECF No. 10-3), does not appear to be relevant to determining the terms of the plan.  See CIGNA Corp. v. Amara, 563 U.S. 421, 438 (2011) ("[W]e conclude that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan.").

subsection (a)(1). Mot. at 7 (ECF No. 10). The defendants are correct that if the plaintiff is able to obtain a remedy under subsection (a)(1), no additional remedy is available under subsection (a)(3). LaRocca v. Borden, Inc., 276 F.3d 22, 28 (1st Cir. 2002) ("[F]ederal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)."). Since I do not know yet whether the plaintiff will be able to recover under subsection (a)(1), it is too soon to know whether subsection (a)(3) remedies are available. Instead, this case may be similar to Varity Corp. v. Howe, where the plaintiffs made claims under both subsections (a)(1) and (a)(3). 516 U.S. 489, 515 (1996). Their (a)(1) claim failed because they had voluntarily transferred out of the retirement plan at issue, but the Supreme Court allowed their (a)(3) claim to proceed. It explained that because the plaintiffs were not members of the plan—and therefore "had no 'benefits due [them] under the terms of [the] plan'"— "[t]hey must rely on the *third* subsection or they have no remedy at all." Id.[3] At this stage, without knowing whether a remedy is available under subsection (a)(1), I cannot determine whether the plaintiff can proceed under subsection (a)(3).

---

[3] In all but one of the decisions the defendants cite, the plaintiffs had been members of the plan at issue at least at some point. See LaRocca, 276 F.3d at 29 (plaintiffs had been reinstated to the plan); Gallagher v. Cigna Healthcare of Me., Inc., 538 F. Supp. 2d 286, 297 (D. Me. 2008) (personal representative of member of the plan sought compensatory damages); King v. UNUM Life Ins. Co. of Am., 221 F. Supp. 2d 1, 3-4 (D. Me. 2002) (plaintiff argued she was wrongfully terminated from her previous plan); Cotten v. Blue Cross and Blue Shield of Mass. HMO Blue, Inc., 2018 WL 6416813, *1 (D. Mass. Dec. 6, 2018) (members of the plan sought benefits they claimed they were wrongfully denied). In the remaining case the defendants cite, the plaintiff's claim under subsection (a)(3) was dismissed not because she was seeking relief under both subsections, but because her claim under subsection (a)(3) did not seek equitable relief. Ballesteros v. Bangor Hydro-Elec. Co., 463 F. Supp. 2d 97, 102 (D. Me. 2006).

*Nature of Relief*

The defendants next argue that, although Count II is couched in equitable terms, it is really seeking payment of benefits (just like in Count I) and cannot rely on subsection (a)(3)'s provision for equitable relief. Mot. at 7. The First Circuit states: "[I]n the context of ERISA, 'equitable relief' includes 'those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages).'" LaRocca, 276 F.3d at 28 (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993)). In Count II, the plaintiff here seeks reformation, injunctive relief, and restitution—typical equitable remedies. "[T]he fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." CIGNA Corp. v. Amara, 563 U.S. 421, 441 (2011) (approving a district court both ordering reformation of a plan *and* issuing an injunction requiring the plan administrator to pay money owed under the newly reformed plan); see also LaRocca, 276 F.3d at 28 ("Although both damages and restitution may remedy the same injury, '[d]amages differs from restitution in that damages is measured by the plaintiff's loss; restitution is measured by the defendant's unjust gain.'" (quoting Dan B. Dobbs, Law of Remedies § 3.1, at 208 (2d ed. 1993))). I conclude that the plaintiff's request for equitable relief in the form of money payments does not foreclose his subsection (a)(3) claim.

### *Viability of Equitable Estoppel Claim*

Next, the defendants argue that the First Circuit has not recognized an equitable estoppel claim under subsection (a)(3) and, if such a claim existed, it could only extend to *interpretations* of a plan, not *modification* of a plan's terms. Mot. at 8, 12. In Guerra-Delgado v. Popular, Inc., 774 F.3d 776, 782 (1st Cir. 2014), the First Circuit said that "[a]lthough many of our sister circuits have recognized equitable estoppel claims under [subsection (a)(3)], we have not yet had occasion to do so." It then went on to confirm its previous assumption "that any such claim under ERISA is necessarily limited to statements that *interpret* the plan and cannot extend to statements that would *modify* the plan." Id. Inexplicably, Guerra-Delgado did not cite the Supreme Court's 2011 opinion in Amara. Amara explicitly approved, as a remedy "within the scope of the term 'appropriate equitable relief' in [subsection (a)(3)]," a district court's "reformation of the terms of the plan, in order to remedy the false or misleading information [the employer] provided." 563 U.S. at 440, 442. The Supreme Court stated: "The power to reform contracts (as contrasted with the power to enforce contracts as written) is a traditional power of an equity court, not a court of law, and was used to prevent fraud." Id. at 440.

In the end, I simply cannot square Guerra-Delgado with Amara. Before I decide which precedent applies to this case, I need a full factual record for both this court and for the inevitable appeal. The Guerra-Delgado decision does not support the 12(b)(6) dismissal the defendants seek.

***Statute of Limitations***

The defendants also claim that Count II falls outside ERISA's statute of limitations for claims alleging a breach of fiduciary duty. Mot. at 12-13. ERISA imposes a limit of six years from "the date of the last action which constituted a part of the breach," or three years from the date the plaintiff had actual knowledge of the breach, whichever is earlier. 29 U.S.C. § 1113. The defendants argue that the "date of the last action which constituted a part of the breach" was when the employer allegedly made misrepresentations to the plaintiff to induce him to take the job, more than six years before the complaint was filed on July 12, 2019. Mot. at 12.[4] The plaintiff argues it was not until 2018 or 2019, when he was denied benefits. Obj. to Mot. at 11.

The defendants did not cite any caselaw to support their position. I did find a Third Circuit decision that may be pertinent. In Ranke v. Sanofi-Synthelabo Inc., the plaintiffs made a claim under subsection (a)(3) based on purported misrepresentations by the defendants. 436 F.3d 197, 202-03 (3d Cir. 2006). In a 2-1 decision, the court held the claim was time-barred:

> [A]ccepting all of the complaint's allegations as true, Kodak and Sanofi initiated the breach of fiduciary duty by purportedly misrepresenting the pension plan benefits in an attempt to persuade appellants to change employment in 1988 and 1994, respectively, and appellants relied on those activities at those times. Therefore, "the date of the last action" was in 1988 for Kodak and in 1994 for Sanofi. Appellants' complaint contains no other allegation of misrepresentations occurring after April 1998 that are independent of and not mere continuations of the initial misrepresentations that led to the changes of employment.

Id.

---

[4] The defendants say this was in 2010, Mot. at 12, but the Complaint alleges it was 2000. Compl. ¶ 27.

The parties have not cited a First Circuit case that has addressed the issue of what constitutes the "date of the last action." (On the statute of limitations issue, they have not cited *any* case.) The statute of limitations is ordinarily an affirmative defense. I conclude that it is preferable to have a factual record before predicting whether the First Circuit will agree with the Ranke majority or dissent or reach some other resolution. The defendants' statute of limitations argument is insufficient for me to dismiss Count II on the face of the Complaint.

### *Additional Arguments*

The defendants' remaining arguments for dismissal of Count II fail because they rely on extrinsic documents that, as I explained above, I cannot consider on a motion to dismiss. See Mot. at 8-9 (arguing there was no misrepresentation) and at 10-11 (arguing that an estoppel claim alleging reliance is only cognizable if the plan term at issue is ambiguous and the term here was not ambiguous).

### CONCLUSION

The arguments the defendants advance are better suited to a summary judgment motion. The motion to dismiss is **DENIED**.

**SO ORDERED.**

**DATED THIS 29TH DAY OF JANUARY, 2020**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**