UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MICHAEL RUSSO,                          )
                                        )
            Plaintiff                   )
                                        )
      v.                                )        2:19-cv-00324-DBH
                                        )
VALMET, INC.,                           )
VALMET, INC. DEFINED                    )
BENEFIT PLAN,                           )
                                        )
            Defendants                  )

**RECOMMENDED DECISION ON MOTIONS FOR JUDGMENT ON THE
RECORD AND MOTION FOR SUMMARY JUDGMENT**

Plaintiff alleges that Defendants violated the Employee Retirement Income Security

Act (ERISA), 29 U.S.C. §§ 1001 et seq., and related regulations by denying Plaintiff

retirement benefits (Count I) and by misrepresenting the type of retirement plan in which

Plaintiff would be enrolled (Count II).  The parties dispute which of Defendants' retirement

plans applied to Plaintiff.  Each party filed a motion for judgment on the record as to Count

I, (Defendant's Motion for Judgment on the Record, ECF No. 42; Plaintiff's Amended

Motion for Judgment on the Record, ECF No. 45); on Count II, Defendants moved for

summary judgment.  (Motion for Summary Judgment, ECF No. 44.)

Following a review of the record and after consideration of the parties' arguments,

I recommend the Court grant Defendants' motion for judgment on the record on Count I,

deny Plaintiff's amended motion for judgment on the record on Count I, and grant

Defendants' motion for summary judgment on Count II.

## FACTUAL AND PROCEDURAL HISTORY[1]

In May 1982, Plaintiff began working for Beloit-Manhattan, a division of Beloit Corporation.  (PASMF ¶ 1; DSMF ¶ 2; DAF ¶ 2.)  In the spring of 1999, Plaintiff left Beloit to work for Precision Roll Grinders of Allentown, Pennsylvania.  (PASMF ¶¶ 2–3; DAF ¶ 2.)   Defendant Valmet, Inc. (Valmet), Beloit, and Precision Roll Grinders were competitors.  (PASMF ¶ 8.)  Valmet acquired some of Beloit's operations, including the operations at Clarks Summit, Pennsylvania.  (PASMF ¶ 7.)

In June 2000, two of Valmet's employees, Michael Mills and David DeMello, contacted Plaintiff.  (PASMF ¶ 6; DAF ¶ 1.)  As a result of his prior experience at Beloit, Plaintiff was familiar with DeMello, who was a sales manager at the Clarks Summit Division.  (PASMF ¶¶ 9–10.)  Mills was the general manager of the Clarks Summit Division.  (PASMF ¶ 11.)  DeMello and Mills urged Plaintiff to consider working for Valmet.  (PASMF ¶ 12.)  Plaintiff travelled from Maine to Albany, New York on two occasions to meet with Mills and Plaintiff had at least two subsequent telephone calls with Mills. (PASMF ¶¶ 13–14, 16).  Plaintiff asserts he specifically inquired about Valmet's defined benefit plan and that Mills and DeMello told him (1) he would receive retirement benefits under Valmet's defined benefit plan, and (2) if he worked for Valmet for at least

---

[1] For purposes of the motions for judgment on the ERISA record, the factual summary is drawn from Defendants' Appendix of Facts (DAF) (ECF No. 42–1) and from the administrative record (ECF Nos. 21–22).  Citations that include "Admin. R. __" refer to the pages as they are designated in the administrative record.  For purposes of the motion for summary judgment, the facts are drawn from Defendants' Statement of Material Facts (DSMF) (ECF No. 44-1), Plaintiff's Additional Statements of Material Fact (PASMF) (ECF No. 47), and to the extent that the matters are undisputed, the administrative record.

five years, his benefits would be calculated based on his prior start date with Beloit. (PASMF ¶¶ 15, 17–19.)

In July 2000, Mills presented Valmet's written offer of employment to Plaintiff. (PASMF ¶ 22; DSMF ¶ 3.)  As relevant here, the offer letter noted that (1) "All benefits and payroll will be administered through our Clarks Summit location," (2) after Plaintiff had "continuously worked for Valmet Inc., for 5 years, [his] original employment date will be adjusted to reflect [his] previous years of service," and (3) "Valmet Inc., Clarks Summit Division has a company paid retirement plan, which will provide retirement income to associates of Valmet Inc., Clarks Summit."  (Admin. R. 511–12; 2347–48.)  Plaintiff was hired on July 17, 2000, as a product sales manager reporting to the general manager of Valmet's Clarks Summit Division.  (DSMF ¶ 1; Admin. R. 836.)

Plaintiff maintains that based on the representations of Mills and DeMello, he understood the language regarding a "company paid retirement plan" to refer to Valmet's defined benefit plan.  (PASMF ¶ 23.)  Plaintiff claims he relied on the representations when he decided to resign from Precision Roll Grinders and work for Valmet.  (PASMF ¶¶ 21, 24.)

Plaintiff received quarterly statements regarding Valmet's contributions to a money purchase plan (the MP Plan) for retirement benefits.  (Admin. R. 541; 840–43; 847–52; 2349–57; 2309–11.)[2]  The MP Plan is a defined contribution plan, not a defined benefit

---

[2] The MP Plan was amended several times, and a series of corporate reorganizations evidently prompted a number of changes to the name of the MP Plan.  The record includes a February 2000 summary plan description for the Sunds Defibrator Pension Plan and Trust, (Admin. R. 494–510), a plan document for the renamed Metso Paper USA, Inc. Pension Plan and Trust with an effective date of January 1, 2000, (Admin. R. 431–93), a December 2002 amendment to the Metso Paper USA Inc. Pension Plan and Trust, (Admin.

plan.  (Admin R. 836; 1841.)  Plaintiff contacted the human resources director of the Clarks
Summit Division to dispute the statements.  (Admin. R. 841; 2310.)  The human resources
director told Plaintiff that if his version of events was true, "it was the result of a screw up
by Mike Mills."  (*Id.*)  Plaintiff ended the exchange by stating he would "deal with this at
the time of my retirement, and enforce my July 2000 agreement with this company,
Valmet."  (*Id.*)  The records of the MP Plan custodian, Wells Fargo, reflect that Plaintiff's
spouse was designated as the beneficiary of the MP account and that Plaintiff selected
email statements over paper statements, (Admin. R. 2359), but Plaintiff denies that he
designated his wife as the beneficiary of his MP account.  (PASMF ¶ 47.)

Valmet also had a defined benefit plan (the DB Plan) at the time Plaintiff was hired.
(DSMF ¶ 16; Admin. R. 346–413; 2366–2433.)[3]  Defendant asserts that the DB Plan was

R. 513–16), and an April 2016 restatement as the Valmet, Inc. Pension Plan and Trust, (Admin. R. 729–
64).

[3] The DB Plan was amended a number of times, and a series of corporate reorganizations evidently
prompted a number of changes to the name of the DB plan.  The record includes several documents for the
predecessor KMW Corp. Retirement Plan, (Admin. R. 1–82), a 1989 plan document for the predecessor
Valmac U.S. Inc. Retirement Plan, (Admin. R. 83–128), a 1989 plan document for the predecessor Valmet-
Appleton Inc. Retirement Plan, (Admin. R. 129–74), a 1989 plan document for the predecessor Valmet-
Charlotte Inc. Retirement Plan, (Admin. R. 177–224), a 1990 plan document for the predecessor
Honeycomb Systems Inc. Retirement Plan, (Admin R. 225–69), a 1991 amendment to the Valmet-Charlotte
Inc. Retirement Plan, (Admin. R. 270), a 1993 amendment to the Valmet-Charlotte Inc. Retirement Plan,
(Admin. R. 271–86), a 1994 amendment to the Honeycomb Systems Inc. Retirement Plan (Admin. R. 175–
76), a 1994 amendment to the Valmet-Appleton Inc. Retirement Plan, (Admin. R. 287–89), a 1996 plan
document for the renamed Valmet Inc. Retirement Plan, (Admin. R. 290–345), a 1997 plan document for
the renamed Metso Paper USA Inc. Retirement Plan, (Admin. R. 346–413), a 1998 summary plan
description under the older named Valmet Inc. Retirement Plan, (Admin. R. 414–430), a 2002 amendment
to the Metso Paper USA Inc. Retirement Plan, (Admin. R. 519–28), three 2003 amendments under the
names of the Valmet Inc. Retirement Plan and the Metso Paper USA Inc. Retirement Plan, (Admin. R. 529–
40), a 2009 plan document for the Metso Paper USA Inc. Retirement Plan, (Admin. R. 542–633), a 2011
amendment to the Metso Paper USA Inc. Retirement Plan, (Admin. R. 644), a 2013 amendment to the
Metso Paper USA Inc. Retirement Plan, (Admin. R. 645–52), a 2014 amendment under the name Valmet
Inc. Defined Benefit Plan, (Admin. R. 653–54), a 2015 summary plan description for the renamed Valmet
Inc. Defined Benefit Plan, (Admin R. 655–74), a 2015 plan document for the Valmet Inc. Defined Benefit

only offered to employees at certain divisions and was not available to employees of the Clarks Summit Division.  (Admin. R. 2302–07.)  In 2003, membership in the DB Plan was "frozen," which meant that the plan was amended to prohibit any new participants from joining the plan.  (DAF ¶¶ 19–20, 24; DSMF ¶¶ 20–21; Admin. R. 535–40.)

Plaintiff was administratively transferred from the Clarks Summit Division to the Appleton Division in 2010.  (PASMF ¶ 53; DAF ¶ 22; DSMF ¶ 23.)  From the time of Plaintiff's hiring in July 2000 until his retirement in May 2018, Plaintiff worked remotely from Scarborough, Maine.  (PASMF ¶ 52, 55.)

In January 2018, in preparation for retirement, Plaintiff inquired through counsel about his health and retirement benefits.  (PASMF ¶ 56; Admin. R. 835.)  On February 6, 2018, Valmet advised that Plaintiff was a participant in the MP Plan as an employee of the Clarks Summit Division.  (PASMF ¶ 57; Admin. R. 836–39.)  In a February 16, 2018, letter, Plaintiff disputed Valmet's assertion.  (PASMF ¶ 58; Admin. R. 840–42.)  Valmet construed the February 16, 2018, letter as an initial claim for benefits under the DB Plan and in July 2018, denied the claim.  (PASMF ¶¶ 65, 67; Admin. R. 1600–1751.)  Valmet determined that Plaintiff was ineligible for the DB Plan because (1) he was eligible for the MP Plan instead and (2) the DB Plan was limited to the Appleton, Charlotte, Honeycomb, Hudson Falls, and Knoxville divisions; employees of the Clarks Summit Division were not eligible.  (Admin. R. 1601.)  Plaintiff appealed from the decision; after a hearing, his appeal

Plan, (Admin. R. 675–727), and a 2015 amendment to the Valmet Inc. Defined Benefit Plan, (Admin. R. 728).

was denied on January 15, 2019.  (PASMF ¶¶ 65, 67; DAF ¶¶ 35–37, Admin. R. 2302–2598.)

DISCUSSION

**A.      The Benefits Claim (Count I)**

     **1.      Standard of Review**

The standard of review for an ERISA benefits claim pursuant to 29 U.S.C. § 1132(a)(1)(B) depends on the discretion afforded the administrator of the plan.  If the plan "grants the administrator 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' [the court] review[s] only to ensure that the administrator's decision is not 'arbitrary or capricious'; if the plan does not grant such discretionary authority, [the court] review[s] benefit decisions de novo."  *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 5-6 (1st Cir. 2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109-15 (1989)).  In this way, when reviewing the actions of plan administrators in a challenge to a denial of benefits "the district court sits more as an appellate tribunal than as a trial court."  *Leahy v. Raytheon Co.*, 315 F.3d 11, 19 (1st Cir. 2002).  A court's review, therefore, is ordinarily based only on the administrative record.  *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 235 (1st Cir. 2006).

At all relevant times, the DB Plan granted the Administrator the discretion and power to construe and interpret the terms of the plan and to determine all questions relating to the eligibility of employees to participate in the plan as well as the amount and kind of benefits due under the plan.  (Admin. R. 2386–87, 2466–67.)  The Court, therefore, will uphold the "administrator's decision if the decision was reasoned and supported by

6

substantial evidence, meaning that the evidence is reasonably sufficient to support a conclusion and contrary evidence does not make the decision unreasonable." *Morales-Alejandro v. Med. Card Sys., Inc.*, 486 F.3d 693, 698 (1st Cir. 2007) (internal quotation omitted).[4]   The relevant question is "not which side [the court] believe[s] is right, but whether the [administrator] had substantial evidentiary grounds for a reasonable decision in its favor." *Ortega-Candelaria v. Johnson & Johnson,* 755 F.3d 13, 20 (1st Cir. 2014). Under the deferential arbitrary, capricious, or abuse of discretion standard of judicial review, the disputed benefits decision "must be upheld if there is any reasonable basis for it." *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 64 (1st Cir. 2005).

### 2.   Analysis

The 1997 version of the DB Plan—the operative version when Plaintiff was hired in July 2000—defined an "eligible employee" as "any employee" but excluded employees of "Valmet Automation division," noncitizens, and employees "who are extended coverage under any other defined benefit pension plan or money purchase pension plan  . . . (including, without limitation, any such plan that is maintained by the former Sunds Defibrator business, which business was merged into a predecessor of the Employer following the merger of Valmet, Inc. and Rauma Corporation . . . ." (Admin. R. 355-56, 2375–76.)[5]

---

[4] The arbitrary and capricious standard also applies to plans in which, as here, the administrator both evaluates and pays claims. *Carter v. Aetna Life Ins. Co.*, 2:17-cv-00398-JAW, 2019 WL 80434, at *13–14 (D. Me. Jan. 2, 2019).  The significance of the resultant conflict of interest depends on the particular facts of a case and is one factor for a court to consider in deciding whether the administrator abused its discretion. *Id*.

[5] Plaintiff also argued that the 1996 version of the DB plan was operative when he was hired in July 2000, rather than the 1997 version.  That argument fails, however, because Plaintiff failed to provide any evidence

Defendants maintain that Plaintiff was not eligible for the DB Plan because he was enrolled in the MP Plan shortly after he was hired.  A 2003 account statement in the record reflects contributions to the MP Plan for 2001 and 2002.  The record lacks any earlier statements.  Plaintiff does not dispute that he received statements for the MP Plan.  There is no evidence that Plaintiff received any statements or other documents reflecting participation in the DB Plan.  Although Plaintiff contends he objected to his enrollment in the MP Plan, the record establishes that Plaintiff was "extended coverage under" another "money purchase plan" likely by 2001 and certainly by 2003.  While Plaintiff evidently argues that Valmet should not have the authority to extend coverage unilaterally under another plan and therefore exclude him from the DB Plan, Plaintiff provides no evidence or persuasive authority to support a finding that Valmet lacked that authority under the terms of either plan.[6]

The reasonableness of Defendants' decision to extend coverage under the MP Plan rather than the DB Plan is supported by the record evidence regarding the specific divisions covered by defined benefit plans prior to the corporate mergers that occurred before Plaintiff's hiring in 2000.  The preamble of the 1997 version of the DB Plan noted that "prior plans covering employees of the Appleton, Honeycomb, Sandy-Hill, and Hudson

calling into doubt the authenticity of the 1997 version or the subsequent amendments.  He also arguably waived the argument when he asserted the applicability of the 1997 version at other times, including in his complaint.

[6] Plaintiff argues that Defendants' decision to extend coverage under the MP plan rather than the DB plan should not be allowed given the representations of Mills and DeMello, but that argument sounds in estoppel rather than plan interpretation and is therefore addressed in the discussion of Count II.  *See infra*.

Falls divisions . . . were previously merged into this Plan." (Admin. R. 350, 2370.)[7]  The omission of Clarks Summit from the 1997 version is understandable because the Clarks Summit Division was not acquired from Beloit until after 1997.  Subsequent versions of the plan also contained similar references to the divisions incorporated within the DB Plan, (Admin. R. 679, 2457), and no version of the DB Plan mentioned the Clarks Summit Division.  The summary plan descriptions for the DB Plan also listed the covered divisions and never included Clarks Summit.  (Admin. R. 418, 657–58, 660.)[8]  In addition, the record contains a packet of information provided to other employees of the Clarks Summit Division summarizing the retirement plan offered, and the documents discussed the MP Plan, not the DB Plan.  (Admin. R. 2237–2288.)[9]

Because Plaintiff has provided no evidence or argument to support a finding that Valmet lacked the authority to extend coverage under the MP plan to Clarks Summit employees, and because the uncontroverted record evidence establishes that Clarks

---

[7] Plaintiff argued that he did work for the Appleton division, the employees of which were covered under the DB Plan, but that argument fails because Plaintiff was not administratively transferred to the Appleton Division until 2010, well after the DB Plan was frozen in 2003, prohibiting any new participation after that point.

[8] Plaintiff argues the Court may not consider summary plan descriptions.  The Supreme Court held that the representations in summary plan descriptions are statements "*about* the plan" and "do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011) (emphasis in original).  The Supreme Court therefore concluded that the representations in the summary plan documents may not be used to override or rewrite the explicit terms of the plan document. *Id.* at 435–38.  Plaintiff, however, has not provided any authority that prohibits consideration of summary plan descriptions when assessing the consistency and reasonableness of an administrator's interpretation of the plan terms.  Regardless, the resolution of the issue would be the same even without the summary plan descriptions.

[9] Plaintiff does not admit the truth of this statement, but he provided no reason to doubt the authenticity of the documents and has provided no other evidence to rebut Defendants' evidence that employees of the Clarks Summit Division were offered participation in the MP Plan, rather than the DB Plan.

Summit employees were extended coverage under the MP Plan, and not the DB Plan, Defendants' decision to deny Plaintiff benefits pursuant to the DB Plan was not arbitrary, capricious, or an abuse of discretion under the terms of the DB Plan.

## B.      The Equitable Claim  (Count II)

Plaintiff argues that even if he is not entitled to benefits under the terms of the DB plan as interpreted by Defendants, the Court should nevertheless award Plaintiff benefits under the DB Plan rather than the MP Plan because he reasonably relied on the representations of Mills and DeMello that Plaintiff would be entitled to a defined benefit retirement plan when he decided to work for Valmet.  A plaintiff may pursue such a claim under a theory of a breach of fiduciary duty pursuant to ERISA, which authorizes "other appropriate equitable relief" for ERISA violations.  *See* 29 U.S.C. § 1132(a)(3);  *Cogan v. Phoenix Life Ins. Co.*, No. 01-268-P-C, 2002 WL 509659, at *3 (D. Me. Apr. 4, 2002); *Trustees of Int'l Pension Fund v. Paul G. White Tile Co.*, No. CIV. 99-130-P-B, 2000 WL 761888, at *4 (D. Me. Mar. 21, 2000); *Reid v. Gruntal & Co.*, 763 F. Supp. 672, 678 (D. Me. 1991); *see also*, *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996).  Defendants argue that Plaintiff's claim is barred by the statute of limitations.

Because ERISA does not provide a statute of limitations for a claim for benefits under § 1132(a)(1), federal courts ordinarily borrow the "most analogous statute of limitations in the forum state."  *Riley v. Metro. Life Ins. Co.*, 744 F.3d 241, 244 (1st Cir. 2014).  A § 1132(a)(1) benefits claim ordinarily accrues "after a claim for benefits is made and a specific sum is sought, the ERISA plan repudiates the claim or the sum sought, and that rejection is clear and made known to the beneficiary."  *Id.* at 245.

For claims involving an alleged breach of a fiduciary duty, however, ERISA provides for (1) a six-year statute of limitations measured from "the date of the last action which constituted a part of the breach or violation," or the latest date on which the fiduciary could have cured a breach involving an omission, (2) a three-year statute of limitations measured from "the earliest date on which the plaintiff had actual knowledge of the breach or violation" or (3) a six-year statute of limitations "in the case of fraud or concealment" measured from the date of discovery of the breach or violation.  29 U.S.C. § 1113.  "[T]he earlier of" the applicable deadlines governs.  *Id.*

Plaintiff's estoppel or misrepresentation claim is untimely under any of the potential limitation periods.  The last action that could be considered as part of the breach occurred in 2000 when Mills and DeMello made the alleged misrepresentations about Plaintiff's eligibility for a defined benefit retirement plan, or by 2003 at the latest, when the uncontroverted evidence establishes that Plaintiff was enrolled in a defined contribution plan other than the plan he was allegedly promised.  *See O'Shea v. UPS Ret. Plan*, 837 F.3d 67, 78 (1st Cir. 2016) (the relevant date for establishing a breach, as opposed to determining issues of remedy, was when "the acts giving rise to the claim" occurred, so for a misrepresentation claim, the plaintiff could have sought equitable relief after the misrepresentations were made, "despite the fact that his beneficiaries had not yet been denied benefits"); *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 506 (3d Cir. 2001), as amended (Mar. 20, 2001) (claims based on alleged misrepresentations were untimely because six-year period began to run no later than the date plaintiffs made decisions in reliance on misrepresentations); *Ranke v. Sanofi-*

*Synthelabo Inc.*, 436 F.3d 197, 203 (3d Cir. 2006) (same; plaintiffs may not reset the clock by later additional detrimental reliance).

The record also establishes that Plaintiff had actual knowledge of the alleged breach by 2003 at the latest, when Plaintiff received the account statement reflecting he was in the MP Plan and was told that Mills must have made a mistake about the availability of a defined benefit plan.  Plaintiff had the information necessary to pursue equitable relief at that time, but he waited many years until he retired before asserting the claim.

The First Circuit's decision in *Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133 (1st Cir. 2005) is instructive.  As here, the *Edes* plaintiffs alleged "[i]n essence" that "Defendants had a fiduciary duty to classify them as eligible for plan participation. . .regardless of the plans' actual eligibility criteria."  *Id.* at 142.  Although the plaintiffs' claims for benefits were denied in 1999, the First Circuit concluded that the breach of fiduciary duty claims asserted in the plaintiffs' 2001 complaint were untimely because the plaintiffs knew in 1994 that they were not classified as employees on the defendant's payroll and thus would not be eligible for benefits.  *Id.*

> These facts establish that Plaintiffs had actual knowledge that if Defendants had a fiduciary duty to classify them as eligible for ERISA plan participation and/or to design their plans accordingly, they had breached that duty.  Accordingly, Plaintiffs need not have had actual knowledge of the plans' eligibility criteria to start the statute of limitations running, and their claim of breach of fiduciary duty . . . filed more than three years later, is time-barred . . . .

*Id.*; *see also*, *Rush v. Martin Petersen Co.*, 83 F.3d 894, 896 (7th Cir. 1996) (claim based on broken oral promise was untimely because plaintiff learned he was enrolled in different retirement plan than promised more than three years before filing suit).[10]

Because Plaintiff's claim for equitable relief based on misrepresentations regarding his eligibility for a defined benefit plan was filed more than ten years after ERISA's limitations period for a breach of a fiduciary duty expired,[11] and because Plaintiff has not established a basis to toll the statute of limitations or to prohibit Defendants from asserting a statute of limitations defense,[12] Plaintiff is not entitled to relief on that claim.

## C.   Attorney's Fees and Costs

Defendant also asks the Court to award attorney's fees and costs.   Under § 1132(g)(1), "the court in its discretion may allow a reasonable attorney's fee and costs of

---

[10] The record also does not support a finding of a longer limitations period due to fraud or concealment. Plaintiff does not allege any subsequent efforts to cover up the allege misrepresentations.  *See J. Geils Band Emp. Ben. Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996) (in order for the longer fraud or concealment limitations period to apply, the plaintiffs "must demonstrate that (1) defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) the plaintiffs were not on actual or constructive notice of that evidence, despite (3) their exercise of reasonable diligence") (internal quotation and modification omitted).  Furthermore, because the discovery of the breach occurred by 2003 at the latest, for the reasons already discussed, the equitable claim would still be untimely. *See id.* ("This Circuit has characterized the facts that trigger discovery or constructive notice as "sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved").

[11] Even if Plaintiff could characterize his claim for equitable relief under § 1132(a)(3) as something other than a breach of fiduciary duty so that ERISA's statute of limitations would arguably not apply, such as a negligent or intentional misrepresentation tort or a quasi-contract claim, federal law would borrow the most analogous statute of limitations from Maine law and Plaintiff's claim would still be untimely.  *See* 14 M.R.S. § 752 (six-year statute of limitations for most civil actions).

[12] Estoppel can bar a defendant from asserting the statute of limitations in some circumstances, but there is no allegation of any misleading statements or omissions regarding the time for filing suit or Plaintiff's ability to bring suit.  *See Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 679 (1st Cir. 2011) ("Equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's conduct or statements in failing to bring suit") (internal quotation omitted).

action to either party." Although a party need not be a "prevailing party" in an ERISA dispute to recover fees and costs, "a fees claimant must show some degree of success on the merits before a court may award attorney's fees," which means something more than "trivial success" or a "purely procedural victory." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255–56 (2010) (internal quotation omitted). When deciding whether an award of fees and costs would be "appropriate" in a particular case, courts consider:

> (1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions.

*Gross v. Sun Life Assur. Co. of Canada*, 763 F.3d 73, 83 (1st Cir. 2014).

If the Court adopts the recommended decision on the motions for judgment on the record and the motion for summary judgment, Defendants would be eligible under the statute for an award of attorney's fees and costs because Defendants will have achieved a sufficient degree of success on the merits as to Count I. The balancing of the relevant factors, however, does not favor an award. None of the factors weighs heavily in Defendants' favor, while the factors involving the degree of culpability or bad faith and the financial capacities of the parties weigh against an award.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' motion for judgment on the record on Count I of the complaint, deny Plaintiff's amended motion for judgment on the record on Count I, and grant Defendants' motion for summary

judgment on Count II of the complaint.  I recommend the Court deny Defendants' request for attorney's fees and costs.

## <u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

<u>/s/ John C. Nivison</u>
U.S. Magistrate Judge

Dated this 26th day of August, 2021.